1
2
3
4
5
6               UNITED STATES DISTRICT COURT
7               CENTRAL DISTRICT OF CALIFORNIA
8
9
10   JOHN L. MILLER,                          Case No. CV 20-06-GW (KK)
11                        Plaintiff,
12          v.                               ORDER DISMISSING COMPLAINT
                                             WITH LEAVE TO AMEND
13   DANIEL SANCHEZ, ET AL.,
14                        Defendant(s).
15
16
17                                  **I.**
18                          **INTRODUCTION**
19          Plaintiff John L. Miller ("Miller"), proceeding pro se and in forma pauperis,
20   filed a Complaint pursuant to 42 U.S.C. § 1983 ("Section 1983") alleging violations of
21   his First, Eighth, and Fourteenth Amendment rights.  For the reasons discussed
22   below, the Court dismisses the Complaint with leave to amend.
23                                  **II.**
24                  **ALLEGATIONS IN THE COMPLAINT**
25          On December 20, 2019, Miller, a 78-year-old inmate at California State Prison
26   – Los Angeles County ("CSP-LAC"), constructively filed[1] the Complaint setting forth

27   ───────────────
28   [1]     Under the "mailbox rule," when a pro se prisoner gives prison authorities a
     pleading to mail to court, the court deems the pleading constructively "filed" on the
     date it is signed.  Roberts v. Marshall, 627 F.3d 768, 770 n.1 (9th Cir. 2010); see

thirteen claims against the following nine defendants in their individual capacity: Daniel Sanchez, A. Pfeil, M. Warmsley, Dr. Sohail Afra, M. Mijangos, G. Stratman, S. Lane, C. Curry, and P.M. Carranza. ECF Docket No. ("Dkt.") 1, Compl.; Dkt. 2, Supporting Facts; Dkt. 8, Exs. A-P.

**A.     ASSIGNMENT TO YARD CREW**

On May 9, 2018, in a separate civil rights action filed by Miller, <u>Miller v. Foreman, et al.</u>, No. 2:14-cv-7524-GW (KK), this Court issued an Order Re: Law Library Access, which advised CSP-LAC of Miller's pending action and noted he would "need[] access to, among other things, legal materials regarding the pending matter, the jail law library, and writing materials, as permitted by jail rules, to represent himself in the pending proceeding." Dkt. 2 at ¶ 12, Ex. E. The Order Re: Law Library Access was mailed to Miller and emailed to CSP-LAC. <u>Id.</u>, ¶ 13.

The computer CSP-LAC uses to send and receive communications from the district court is located in the Litigation Office where defendant Sanchez is, and on May 9, 2018 was, the Litigation Coordinator. <u>Id.</u>, ¶¶ 14-16. Upon receipt of the Order Re: Law Library Access, defendant Sanchez contacted defendant Pfeil and "had the latter, that very day" assign Miller to Yard Crew on Monday through Friday from 6:30 a.m. to 2:00 p.m., knowing that the law library hours were Monday through Friday from 9:00 a.m. to 2:30 p.m. <u>Id.</u>, ¶¶ 21, 23. In addition, defendant Sanchez was previously Miller's caseworker and, thus, "knew that [Miller] was a fair-complexioned white man with a history of skin cancer caused by the sun's ultraviolet rays." <u>Id.</u>, ¶¶ 27-28.

Miller's first day on the Yard Crew job was Monday, May 14, 2018. <u>Id.</u>, ¶ 34. On Tuesday, May 15, 2018, due to the sunburn he received from the prior day's sun exposure, Miller's work hours were reduced so that he would only work until 10:00 a.m. <u>Id.</u>, ¶ 37. On May 16, 2018, Miller learned the Yard Crew job was assigned on

<u>Douglas v. Noelle</u>, 567 F.3d 1103, 1107 (9th Cir. 2009) (stating the "mailbox rule applies to Section 1983 suits filed by pro se prisoners").

the same day the Order Re: Law Library Access was issued.  Id., ¶ 39.  Miller alleges being assigned to a job that conflicted with the hours the library was open on the same day the Court issued the Order Re: Law Library Access "had a chilling effect on [him] with respect to his continuing with the Miller v. Foreman lawsuit."  Id., ¶ 40.

**B.     LIBRARY ACCESS**

On May 22, 2018, Miller had photocopies made of an ex parte application for counsel in the Miller v. Foreman case.  Id., ¶ 42.  Defendant Warmsley, the librarian, read the application and contacted defendant Sanchez, who contacted defendant Pfeil.  Id., ¶ 44.  "[T]hat very May 22, 2018 day," defendant Pfeil reassigned Miller from the Yard Crew to a porter job from 2:00 p.m. to 9:30 p.m.  Id.

On June 6, 2018, Miller had an inmate library clerk take an ex parte application for access to a legal research computer to the library for photocopying.  Id., ¶¶ 56-57.  "Although outside of standard procedure," defendant Warmsley had previously allowed that particular inmate library clerk to bring in Miller's legal documents for photocopying on his behalf.  Id., ¶ 58.  However, after reading the June 6, 2018 application, defendant Warmsley told the inmate library clerk he could no longer bring in Miller's legal documents for photocopying and called Miller to the library to reprimand him regarding the allegations in the application.  Id., ¶ 60.  Miller alleges that the librarian "actually reading" his legal filings that was to be submitted to the court "had a chilling effect on [him] with respect to his continuing with the Miller v. Foreman lawsuit."  Id., ¶ 64.

On June 12, 2018, Miller was removed from his porter job.  Id., ¶¶ 52-53.

**C.     MILLER'S HERNIA SURGERY**

On May 13, 2018, Miller's "umbilical hernia repair" surgery previously performed by Dr. Pavel Petrik "came undone" and Miller submitted a grievance requesting "a CT scan of my belly button area before any repeat surgery and that the re-operation be done by a different surgeon tha[n] the bungling Dr. Petrik."  Id., ¶¶ 31-32, Ex. C.

On October 26, 2018, Miller saw Dr. Afra and requested surgical repair of his "large, tender, and painful hernia." Id., ¶ 67. Dr. Afra denied the request on the grounds it was "a big operation that would be dangerous to him," even though "the hernia surgeon" had recommended the hernia repair surgery on April 17, 2018 and Miller's cardiologist had cleared him for surgery. Id., ¶¶ 67-68.

On October 28, 2018, Miller filed a grievance regarding the denial of his request for surgery. Id., ¶ 69.

On October 29, 2018, Miller's intestines "protruded" through his abdominal hernia and Miller was transported that night by ambulance to Palmdale Regional Medical Center. Id., ¶¶ 72-73. Miller underwent a four-hour surgical operation and while he was recovering at the hospital, his heart went into atrial fibrillation and then heart failure. Id., ¶ 73-74. Several days later, Miller caught pneumonia. Id., ¶ 75.

On November 7, 2018, Miller's October 28, 2018 grievance regarding the denial of Miller's request for surgery was rejected by defendant Mijangos as duplicative of his May 13, 2018 grievance requesting a CT scan of his hernia. Id., ¶ 76, Ex. G.

On November 14, 2018, Miller was discharged from the hospital and transported to Centinela State Prison to continue recovering. Id., ¶ 77.

**D.     RETURN TO CSP-LAC**

On November 22, 2018, Miller was transported back to CSP-LAC, arriving at approximately 2:00 a.m. Id., ¶ 79. Miller was issued a blanket and a [bed]sheet. Id. Later that day, Miller submitted a Clothing Exchange shortage slip requesting another blanket and three more sheets because two blankets and four sheets "are the standard prison issue." Id., ¶ 80 n.4.

On November 26, 2018, Miller received a second sheet. Id., ¶ 81. November and December 2018 were "colder than normal for those two months, with temperatures often in the 30s and below." Id., ¶ 84. C-Facility, where Miller was

4

housed during that time, did not have any heat and the guards would leave the front door of the building open for "prolonged periods." Id., ¶ 85.

On November 28, 2018, Miller submitted a grievance alleging cruel and unusual punishment on the ground that when he returned from "out to medical" he was only issued one blanket and his property, including his "cold-weather clothing," had not yet been returned and he was "still freezing." Id., ¶ 86, Ex. H. On November 30, 2018, defendant Stratman rejected the November 28, 2018 grievance on the ground that it "involves multiple issues that do not derive from a single event, or are not directly related and cannot reasonably be addressed in a single response due to this fact." Id., ¶ 90, Ex. H. Miller alleges defendant Stratman knew that any inmate with a CDCR number beginning with an "A", like Miller's, was elderly because CDCR stopped issuing "A" numbers in 1965. Id., ¶ 93.

On December 4, 2018, Miller submitted a "Reasonable Accommodation Request", which stated: "I don't have my eyeglasses, hearing aids, cane, ADA vest, orthotic boots, dental plate needed for chewing, and cold-weather clothing. I'm 76, recovering from the after effects of pneumonia, and have only one blanket." Id., ¶ 96, Ex. J.

On December 11, 2018, Lieutenant C. Meux had a second blanket issued to Miller. Id., ¶ 109.

On December 23, 2018, Miller submitted a grievance against "Retaliation by [Receiving and Release ("R&R") department] for Lawsuit" alleging the entire R&R department was delaying the return of Miller's belongings in retaliation for a summons issuing on October 31, 2018 in another lawsuit, Miller v. White, No. CV 14-7543-GW (KK), against two former R&R officers. Id., ¶ 112, Ex. K.

On December 28, 2018, Miller was taken to R&R where defendants Lane and Curry issued him "most of his property." Id., ¶¶ 115, 117. Miller notes that while no documents were missing, his three folders containing the Miller v. White documents were "emptied out, whereas those containing the other two lawsuits were still intact."

Id., ¶ 123. When Miller returned to his cell, he realized "a lot of his property was missing, most notably his typewriter supplies that he used to do his legal work – i.e., three nylon-ribbon cartridges and three of his four printwheels." Id., ¶ 129.

On January 7, 2019, Miller submitted a grievance alleging "More Retaliation by R&R" seeking "return, replacement, or compensation for my non-returned property [and] the first initial of R&R C/Os Lee, Curry, and Sgt. Caranza." Id., ¶ 130, Ex. L. On February 12, 2019, the Inmate Appeals Office cancelled Miller's prior December 23, 2018 grievance as duplicative of the subsequent January 7, 2019 grievance. Id., ¶ 132. On February 27, 2019, defendant Carranza interviewed Miller regarding the January 7, 2019 grievance. Id., ¶ 135. Plaintiff alleges defendant Carranza failed to inform him, in either the interview or response to his grievance, that he had "wrongly named C/O Lee ." Id., ¶ 137. In his response to the January 7, 2019 grievance, defendant Carranza falsely stated Miller "did not provide any additional information and was very uncooperative." Id., ¶142.

E.     MILLER'S GOVERNMENT CLAIM

On April 25, 2019, Miller submitted a Government Claim to the California Department of General Services against defendants Carranza, Lane, and Curry for having "kept the aforesaid non-returned property items" worth $217.15. Id., ¶ 156, Ex. N.

On July 5, 2019, the California Department of General Services sent Miller a letter stating they had "delegated the authority to settle and pay or to reject certain kinds of claims" to CDCR, and were, therefore, forwarding Miller's claim to CDCR's Office of Legal Affairs. Id., ¶ 157, Ex. O. Miller alleges the delegation of his Government Claim to CDCR "deprived [him] of an adequate & meaningful post-deprivation state remedy for the theft of" his property. Id., ¶ 158.

On October 8, 2019, the CDCR rejected Miller's Government Claim. Id., ¶ 159, Ex. P.

///

### III.

### CLAIMS IN THE COMPLAINT

Based on the allegations set forth above, Miller sets forth the following thirteen claims:

(1) Defendant Sanchez violated Miller's First Amendment rights by assigning Miller to Yard Crew "for the days & time when the library was open" in retaliation for this Court's May 9, 2018 Order Re: Law Library Access;

(2) Defendant Sanchez violated Miller's Eighth Amendment rights when he had defendant Pfeil assign Miller to Yard Crew knowing Miller had a history of skin cancer;

(3) Defendant Pfeil violated Miller's First Amendment rights by assigning Miller to Yard Crew "in complicity with" defendant Sanchez's retaliation against Miller;

(4) Defendant Warmsley violated Miller's First Amendment rights "by retaliating against him for his Ex Parte Application for Order for Access to Legal Research Computer to this Court in his Miller v. Foreman lawsuit";

(5) Defendant Afra violated Miller's Eighth Amendment rights by deliberate indifference to Miller's "serious medical need to have his large, tender, and painful hernia surgically repaired";

(6) Defendant Mijangos violated Miller's First Amendment right to petition the government for redress of grievances by wrongly rejecting Miller's October 28, 2018 grievance regarding the denial of Miller's request for surgery;

(7) Defendant Stratman violated Miller's First Amendment right to petition the government for redress of grievances by wrongly rejecting Miller's November 28, 2018 grievance regarding his request for a blanket and return of his property;

7

(8)   Defendant Stratman violated Miller's Eighth Amendment rights by
      deliberate indifference to a substantial risk of serious harm to Miller's
      health;

(9)   Defendant Lane violated Miller's First Amendment rights by wrongly
      confiscating Miller's property in retaliation for the <u>Miller v. White</u> lawsuit;

(10)  Defendant Lane violated Miller's Fourteenth Amendment procedural due
      process rights by wrongly confiscating Miller's property because California
      does not provide "a suitable & meaningful post[-]deprivation remedy";

(11)  Defendant Curry violated Miller's First Amendment rights by wrongly
      confiscating Miller's property in retaliation for the <u>Miller v. White</u> lawsuit;

(12)  Defendant Curry violated Miller's Fourteenth Amendment procedural due
      process rights by wrongly confiscating Miller's property because California
      does not provide "a suitable & meaningful post[-]deprivation remedy";

(13)  Defendant Carranza violated Miller's First Amendment rights by delaying
      the issuance of Miller's property to him for 36 days (from November 22,
      2018 to December 28, 2018) in retaliation for the <u>Miller v. White</u> lawsuit.

Dkt. 1, Compl.

Miller seeks compensatory, nominal, and punitive damages.  <u>Id.</u> at 13-14.

## IV.

## <u>STANDARD OF REVIEW</u>

Where a plaintiff is incarcerated and/or proceeding <u>in forma pauperis,</u> a court

must screen the complaint under 28 U.S.C. §§ 1915 and 1915A and is required to

dismiss the case at any time if it concludes the action is frivolous or malicious, fails to

state a claim on which relief may be granted, or seeks monetary relief against a

defendant who is immune from such relief.  28 U.S.C. §§ 1915(e)(2)(B), 1915A; <u>see</u>

<u>Barren v. Harrington</u>, 152 F.3d 1193, 1194 (9th Cir. 1998).

Under Federal Rule of Civil Procedure 8 ("Rule 8"), a complaint must contain a

"short and plain statement of the claim showing that the pleader is entitled to relief."

Fed. R. Civ. P. 8(a)(2). In determining whether a complaint fails to state a claim for screening purposes, a court applies the same pleading standard as it would when evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). See Watison v. Carter, 668 F.3d 1108, 1112 (9th Cir. 2012).

A complaint may be dismissed for failure to state a claim "where there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory." Zamani v. Carnes, 491 F.3d 990, 996 (9th Cir. 2007). In considering whether a complaint states a claim, a court must accept as true all of the material factual allegations in it. Hamilton v. Brown, 630 F.3d 889, 892-93 (9th Cir. 2011). However, the court need not accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." In re Gilead Scis. Sec. Litig., 536 F.3d 1049, 1055 (9th Cir. 2008). Although a complaint need not include detailed factual allegations, it "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Cook v. Brewer, 637 F.3d 1002, 1004 (9th Cir. 2011) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)). A claim is facially plausible when it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. The complaint "must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." Starr v. Baca, 652 F.3d 1202, 1216 (9th Cir. 2011).

"A document filed pro se is 'to be liberally construed,' and a 'pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" Woods v. Carey, 525 F.3d 886, 889-90 (9th Cir. 2008). However, liberal construction should only be afforded to "a plaintiff's factual allegations," Neitzke v. Williams, 490 U.S. 319, 330 n.9, 109 S. Ct. 1827, 104 L. Ed. 2d 339 (1989), and a court need not accept as true "unreasonable inferences or assume the truth of legal conclusions cast in the form of factual allegations," Ileto v. Glock Inc., 349 F.3d 1191, 1200 (9th Cir. 2003).

9

1    If a court finds the complaint should be dismissed for failure to state a claim,

2  the court has discretion to dismiss with or without leave to amend.  Lopez v. Smith,

3  203 F.3d 1122, 1126-30 (9th Cir. 2000).  Leave to amend should be granted if it

4  appears possible the defects in the complaint could be corrected, especially if the

5  plaintiff is pro se.  Id. at 1130-31; see also Cato v. United States, 70 F.3d 1103, 1106

6  (9th Cir. 1995).  However, if, after careful consideration, it is clear a complaint cannot

7  be cured by amendment, the court may dismiss without leave to amend.  Cato, 70

8  F.3d at 1107-11; see also Moss v. U.S. Secret Serv., 572 F.3d 962, 972 (9th Cir. 2009).

9                                              **V.**

10                                      **DISCUSSION**

11  **A.    THE COMPLAINT FAILS TO STATE A FIRST AMENDMENT**

12         **RETALIATION CLAIM AGAINST DEFENDANTS SANCHEZ,**

13         **PFEIL, WARMSLEY, LANE, CURRY, OR CARRANZA**

14         **1.    Applicable Law**

15    "Prisoners have a First Amendment right to file grievances against prison

16  officials and to be free from retaliation for doing so."  Watison v. Carter, 668 F.3d

17  1108, 1114 (9th Cir. 2012) (citation omitted); Soranno's Gasco, Inc. v. Morgan, 874

18  F.2d 1310, 1314 (9th Cir. 1989).  To state a viable First Amendment retaliation claim,

19  a prisoner must allege five elements: "(1) [a]n assertion that [a prison official] took

20  some adverse action against an inmate (2) because of (3) that prisoner's protected

21  conduct, and that such action (4) chilled the inmate's exercise of his First Amendment

22  rights, and (5) the action did not reasonably advance a legitimate correctional goal."

23  Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005); see Pratt v. Rowland, 65

24  F.3d 802, 808 (9th Cir. 1995) (observing prisoner "must show that there were no

25  legitimate correctional purposes motivating the actions he complained of").

26    Adverse action is action that "would chill a person of ordinary firmness" from

27  engaging in that activity.  Pinard v. Clatskanie School District, 467 F.3d 755, 770 (9th

28  Cir. 2006).  Though an adverse action need not be an independent constitutional

violation, inconsequential or de minimis harms do not constitute adverse actions. Watison, 668 F.3d at 1114 (to support a claim, a harm must be "more than minimal").

In addition, "[b]ecause direct evidence of retaliatory intent rarely can be pleaded in a complaint, allegation of a chronology of events from which retaliation can be inferred is sufficient to survive dismissal." Watison, 668 F.3d at 1114 (9th Cir. 2012); Pratt, 65 F.3d at 808 ("[T]iming can properly be considered as circumstantial evidence of retaliatory intent[.]").

## 2. Analysis

### a. Defendant Sanchez

Miller alleges defendant Sanchez, the Litigation Coordinator at CSP-LAC, retaliated against him on the same day the Court issued an Order Re: Law Library Access by having defendant Pfeil assign Miller to Yard Crew from 6:30 a.m. to 2:00 p.m., when the law library is only open from 9:00 a.m. to 2:30 p.m. Dkt. 2 at ¶¶ 12-23. After only one day, however, Miller's work hours were reduced so that he completed his work duties by 10:00 a.m. Id., ¶¶ 34, 37. Therefore, despite Miller's conclusory allegation that the job assignment had a chilling effect on his pursuing the Miller v. Foreman lawsuit, id., ¶ 40, the Court finds the assignment to a job that conflicted with law library access for a single day is de minimus and does not rise to the level of an adverse action that would deter a prisoner of "ordinary firmness" from further First Amendment activities. See Watison, 668 F.3d at 1114; Springfield v. Khalit, No. 2:17-CV-2675-JAM-KJN-P, 2019 WL 1745872, at *2 (E.D. Cal. Apr. 18, 2019) (finding "the denial of law library access on one occasion, without more, does not constitute an adverse action") (citing Meeks v. Schofield, 625 Fed. App'x. 697, 702 (6th Cir. 2015) (denial of access to the library on one occasion is de minimis conduct that does not constitute an adverse action); Gordon v. Bertsch, 2015 WL 10319307 at *10 (D.N.D. 2015) (the allegation that plaintiff was told on one occasion that he could not access the law library, without more, is not an objectively sufficiently adverse action to satisfy the second element of a claim for retaliation); Anderson v.

Akinjide, 2008 WL 2964145, at *6 (S.D. Tex. July 30, 2008) (denying prisoner access to law library on one occasion was de minimis)); Brown v. Fitzpatrick, No. 2:14-CV-00397-SAB, 2015 WL 13360316, at *3 (E.D. Wash. May 21, 2015), aff'd, 667 F. App'x 267 (9th Cir. 2016) (finding no adverse action where the plaintiff's "placement in a cell with property restrictions was only temporary").

Hence, Miller's First Amendment retaliation claim against defendant Sanchez is subject to dismissal.

### b.    Defendant Pfeil

Miller's only allegation against defendant Pfeil is that he assigned Miller to Yard Crew "in complicity with" defendant Sanchez' retaliation. Dkt. 1 at 9. First, Miller's claim against defendant Pfeil fails for the same reason as his claim against defendant Sanchez. Second, there are no plausible allegations showing defendant Pfeil assigned Miller to Yard Crew "because of" any activity in the Miller v. Foreman lawsuit, or even knew about the Miller v. Foreman lawsuit. Hence, Miller's First Amendment retaliation claim against defendant Pfeil is subject to dismissal.

### c.    Defendant Warmsley

Miller alleges defendant Warmsley retaliated against him for ex parte applications in connection with the Miller v. Foreman lawsuit that Miller had photocopied, in which Miller complained about his library access. Dkt. 2 at ¶¶ 42-64. It is unclear, however, what adverse action Miller alleges defendant Warmsley took against him. To the extent Miller is complaining that defendant Warmsley read his legal filings and called defendant Sanchez, who then called defendant Pfeil, who had Miller re-assigned from Yard Crew to porter at times that did not conflict with the library hours, it is not apparent how such action is in any way adverse to Miller. To the extent Miller is complaining that defendant Warmsley revoked his permission to have another inmate law clerk photocopy Miller's documents, Miller himself notes granting such permission in the first place was "outside of standard procedure." Id., ¶ 58. The Court, therefore, finds either alleged adverse action is de minimus and does

not rise to the level of an adverse action that would deter a prisoner of "ordinary firmness" from further First Amendment activities.  See Watison, 668 F.3d at 1114. Hence, Miller's First Amendment retaliation claim against defendant Warmsley is subject to dismissal.

### d. Defendants Lane, Curry, and Carranza

Miller alleges defendants Lane, Curry, and Carranza were delaying the return of his belongings in retaliation for a summons issuing on October 31, 2018 in Miller v. White against two former R&R officers.  Dkt. 2 at ¶¶ 112-42.  Miller, however, fails to plausibly allege defendants Lane, Curry, or Carranza took any actions "because of" the summons issuing in Miller v. White a month before Miller returned to CSP-LAC, or that they even knew about the lawsuit against the two former R&R officers. Hence, Miller's First Amendment retaliation claim against defendants Lane, Curry, and Carranza is subject to dismissal.

## B. THE COMPLAINT FAILS TO STATE AN EIGHTH AMENDMENT CRUEL AND UNUSUAL PUNISHMENT CLAIM AGAINST DEFENDANTS SANCHEZ OR STRATMAN

### 1. Applicable Law

Prison officials violate the Eighth Amendment's prohibition against cruel and unusual punishment when they deny humane conditions of confinement with deliberate indifference.  Farmer v. Brennan, 511 U.S. 825, 832, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994).  To state a conditions of confinement claim, an inmate must show objective and subjective components.  Clement v. Gomez, 298 F.3d 898, 904 (9th Cir. 2002).

The objective component requires an "objectively insufficiently humane condition violative of the Eighth Amendment" which poses a substantial risk of serious harm.  Osolinski v. Kane, 92 F.3d 934, 938 (9th Cir. 1996).  While "'deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation,'" the routine

discomforts and deprivations inherent in prison settings do not give rise to Eighth Amendment violations. Johnson v. Lewis, 217 F.3d 726, 731 (9th Cir. 2000) (quoting Wilson v. Seiter, 501 U.S. 294, 298, 111 S. Ct. 2321, 115 L. Ed. 2d 271 (1991)). Under the Eighth Amendment, "[p]rison officials have a duty to ensure that prisoners are provided adequate shelter, food, clothing, sanitation, medical care, and personal safety." Id. (citing Farmer, 511 U.S. at 832; Keenan v. Hall, 83 F.3d 1083, 1089 (9th Cir. 1996); Hoptowit v. Ray, 682 F.2d 1237, 1246 (9th Cir. 1982)). "The circumstances, nature, and duration of a deprivation of these necessities must be considered in determining whether a constitutional violation has occurred[, and] 'the more basic the need, the shorter the time it can be withheld.'" Id. (quoting Hoptowit, 682 F.2d at 1259).

The subjective component requires prison officials acted with the culpable mental state, which is "deliberate indifference" to the substantial risk of serious harm. Farmer, 511 U.S. at 837-38; Estelle v. Gamble, 429 U.S. 97, 104, 97 S. Ct. 285, 291, 50 L. Ed. 2d 251 (1976). "[A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837-38.

### 2. Analysis

#### a. Defendant Sanchez

Miller alleges defendant Sanchez had him assigned to Yard Crew during the sunny hours of the day, even though he "knew that [Miller] was a fair-complexioned white man with a history of skin cancer caused by the sun's ultraviolet rays." Id., ¶¶ 27-28. Miller, however, only worked a single day outdoors from 6:30 a.m. to 2:30 p.m., and his hours were thereafter limited to end by 10:00 a.m. Id., ¶¶ 34, 37. While Miller was exposed to the elements from 6:30 a.m. to 2:30 p.m. on May 14, 2018,

14

Miller did not suffer substantial deprivations of access to water, shelter, or sanitation and fails to allege the temperatures and conditions of the exposure were sufficiently severe to result in a violation of his Eighth Amendment rights.  See Gunn v. Tilton, No. CV 08-1039-PHX-SRB, 2011 WL 1121949, at *4 (E.D. Cal. Mar. 23, 2011) (finding plaintiff who was detained outside for six hours without access to water, shelter, or a restroom and complained of sunburns afterward "was not sufficiently serious to form the basis for an Eighth Amendment violation").  Hence, Miller's Eighth Amendment claim against defendant Sanchez is subject to dismissal.

### b.    Defendant Stratman

Miller alleges defendant Stratman violated his Eighth Amendment rights by rejecting his November 26, 2018 grievance requesting a second blanket and return of his property, including his cold-weather clothing.  Dkt. 2 at ¶¶ 86-93.  Miller alleges he was only given one blanket and one sheet when he arrived at CSP-LAC on November 22, 2018 and despite the November 26, 2018 grievance, he did not receive a second blanket until three weeks later on December 11, 2018.  Id., ¶¶ 79, 109.

"[P]risoners have a right to protection from extreme cold."  Micenheimer v. Soto, No. CV 13-3853-CJC JEM, 2013 WL 5217467, at *5 (C.D. Cal. Sept. 16, 2013) (quoting Dixon v. Godinez, 114 F.3d 640, 642 (7th Cir. 1997)); Wilson, 501 U.S. at 304 ("Some conditions of confinement may establish an Eighth Amendment violation 'in combination' when each would not do so alone, but only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise—for example, a low cell temperature at night combined with a failure to issue blankets.").  Whether an inmate's exposure to cold temperatures constitutes an Eighth Amendment violation depends on the severity of the cold, the duration of the prisoner's exposure, the presence of an alternative means to warmth (i.e., a blanket or jacket), the efficacy of that alternative, and the presence of "other uncomfortable conditions[.]"  Id. (citing Dixon, 114 F.3d at 644).  For example, in Micenheimer, the court found plaintiff was denied "the minimal civilized

measure of life's necessities" where he endured "cold temperatures for at least seven weeks when his cell received no heat and continued to be exposed to cold air from the air conditioner despite below-freezing outside temperatures as low as 9 degrees Fahrenheit. Moreover, Plaintiff alleges that he did not receive thermal bedding or thermal clothing to protect himself from the cold. According to Plaintiff, this exposure to excessively cold temperatures made his hands and feet 'numb' and caused him to suffer a 'cold illness.'" Id.; see also Johnson v. Lewis, 217 F.3d 726, 732-33 (9th Cir. 2000) (exposing inmates to subfreezing temperatures for five to nine hours without adequate protection is sufficiently serious to violate the Eighth Amendment).

Here, while defendant Stratman may have been aware Miller was "elderly", there is no indication he knew Miller was suffering from pneumonia or other health complications. Accordingly, without more, it is not clear defendant Stratman knew of an excessive risk to Miller's health or safety as a result of Miller having only one blanket and two sheets for three weeks. Compare Wallace v. Davis, No. 17-CV-05488-SI, 2019 WL 652889, at *4-5 (N.D. Cal. Feb. 15, 2019) (finding no objectively serious condition where plaintiff "had to sit or lie on the ground for less than five hours when temperatures were in the range of 38 to 48 degrees Fahrenheit") with Paxton v. Idaho Dep't of Correction, No. 1:12-CV-00136-REB, 2014 WL 354697, at *7 (D. Idaho Jan. 31, 2014) (finding a genuine dispute whether consistently exposing an "80-year-old frail man with significant health problems" to drafts of cold outside air during periods of time when the weather is at or near the freezing level for several months "accords with society's standards of decency regarding treatment of geriatric patients in a medical housing unit, who may be more sensitive to cold weather conditions because of advanced age."). Hence, Miller's Eighth Amendment claim against defendant Stratman is subject to dismissal.

///

///

///

## C. THE COMPLAINT FAILS TO STATE AN EIGHTH AMENDMENT DELIBERATE INDIFFERENCE CLAIM AGAINST DEFENDANT AFRA

### 1. Applicable Law

Prison officials or private physicians under contract to treat state inmates "violate the Eighth Amendment if they are 'deliberate[ly] indifferen[t] to [a prisoner's] serious medical needs.'" Peralta v. Dillard, 744 F.3d 1076, 1081 (9th Cir. 2014) (alterations in original); Farmer, 511 U.S. at 828; West v. Atkins, 487 U.S. 42, 54, 108 S. Ct. 2250, 101 L. Ed. 2d 40 (1988). To assert a deliberate indifference claim, a prisoner plaintiff must show the defendant (1) deprived him of an objectively serious medical need, and (2) acted with a subjectively culpable state of mind. Wilson, 501 U.S. at 297.

"A medical need is serious if failure to treat it will result in 'significant injury or the unnecessary and wanton infliction of pain.'" Peralta, 744 F.3d at 1081. "A prison official is deliberately indifferent to [a serious medical] need if he 'knows of and disregards an excessive risk to inmate health.'" Id. at 1082. This standard "requires more than ordinary lack of due care." Colwell v. Bannister, 763 F.3d 1060, 1066 (9th Cir. 2014). The "official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id.

"Deliberate indifference 'may appear when prison officials deny, delay, or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care.'" Id. (citing Hutchinson v. United States, 838 F.2d 390, 394 (9th Cir. 1988)). In either case, however, the indifference to the inmate's medical needs must be purposeful and substantial; negligence, inadvertence, or differences in medical judgment or opinion do not rise to the level of a constitutional violation. See Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996), cert. denied, 519 U.S. 1029, 117 S. Ct. 584, 136 L. Ed. 2d 514 (1996); see also Toguchi

v. Chung, 391 F.3d 1051, 1060 (9th Cir. 2004) (negligence constituting medical malpractice is not sufficient to establish an Eighth Amendment violation); Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989). Similarly, "[a] difference of opinion between a prisoner-patient and prison medical authorities regarding treatment does not give rise" to a Section 1983 claim. Franklin v. Or., State Welfare Div., 662 F.2d 1337, 1344 (9th Cir. 1981). A plaintiff "must show that the course of treatment the doctors chose was medically unacceptable under the circumstances, and . . . that they chose this course in conscious disregard of an excessive risk to plaintiff's health." Jackson, 90 F.3d at 331. "Moreover, mere delay . . . , without more, is insufficient to state a claim of deliberate medical indifference." Shapley v. Nev. Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985).

### 2. Analysis

Miller alleges defendant Afra denied his request for surgery in deliberate indifference to Miller's "serious medical need to have his large, tender, and painful hernia surgically repaired". Dkt. 2 at ¶¶ 67-68. However, defendant Afra explained surgery was denied because it was dangerous to Miller, who is elderly. Id. In fact, when Miller did undergo surgery, his heart went into atrial fibrillation and then heart failure during his recovery in the hospital. Id., ¶ 74. Several days later, Miller caught pneumonia. Id., ¶ 75. Ultimately, Miller's difference in opinion with defendant Afra's treatment does not give rise to a Section 1983 claim. See Franklin, 662 F.2d 1337, 1344 (9th Cir. 1981). Moreover, Miller fails to allege he suffered any additional harm as a result of the three-day delay in surgery (or that he would have been sent for surgery before November 29, 2018 even if defendant Afra had granted his request). See Shapley, 766 F.2d at 407; Legare v. Lee, No. EDCV 15-00833-JVS (AFM), 2017 WL 1856231, at *5 (C.D. Cal. Jan. 13, 2017), report and recommendation adopted, 2017 WL 1843682 (C.D. Cal. May 8, 2017) ("Plaintiff has failed to cite to any evidence showing that he suffered further harm from the brief delay in changing his surgical dressing."); Goldsmith v. Davis, No. 2:10-CV-1995-KJM (EFB), 2013 WL 3490659,

18

at *6 (E.D. Cal. July 10, 2013) ("Plaintiff fails to demonstrate that he suffered harmful consequences as a result of this one-day delay."). Hence, Miller's Eighth Amendment claim against defendant Afra is subject to dismissal.

## D. THE COMPLAINT FAILS TO STATE A FIRST AMENDMENT CLAIM FOR DENIAL OF RIGHT TO PETITION THE GOVERNMENT AGAINST DEFENDANTS MIJANGOS OR STRATMAN

### 1. Applicable Law

The Petition Clause of the First Amendment guarantees only that an individual may "speak freely and petition openly" and that he will be free from retaliation by the government for doing so. <u>Smith v. Arkansas State Highway Employees, Local 1315</u>, 441 U.S. 463, 464-65, 99 S. Ct. 1826, 60 L. Ed. 2d 360 (1979) (per curiam). Prisoners have a First Amendment right to file prison grievances, <u>Brodheim v. Cry</u>, 584 F.3d 1262, 1269 (9th Cir. 2009), and a prisoner's "right of meaningful access to the courts extends to established prison grievance procedures." <u>Bradley v. Hall</u>, 64 F.3d 1276, 1279 (9th Cir. 1995). However, a prisoner's right to petition the government is a right of expression and "does not guarantee a response to the petition or the right to compel government officials to act on" the petition. <u>Carter v. Cannedy</u>, No. 08-CV-2381-JCW, 2010 WL 3210856, at *3 (E.D. Cal. Aug. 10, 2010).

Article 8 governs the processing of prison grievances. Cal. Code Regs. tit. 15, § 3084.1. "The appeal process is intended to provide a remedy for inmates and parolees with identified grievances and to provide an administrative mechanism for review of departmental policies, decisions, actions, conditions, or omissions that have a material adverse effect on the welfare of inmates and parolees." Cal. Code Regs. tit. 15, § 3084.1. The inmate initiates the process by completing and then submitting/filing a CDCR Form 602 "to describe the specific issue under appeal and the relief requested." § 3084.2(a). Article 8 uses the terms "submit" and "file" interchangeably. <u>See</u> § 3084.2(a)(1) ("**Filings** of appeals combining unrelated issues shall be rejected

and returned to the appellant by the appeals coordinator with an explanation that the issues are deemed unrelated and may only be **submitted** separately." (emphasis added)); <u>compare</u> § 3084.1(f) ("An inmate or parolee has the right to file one appeal every 14 calendar days unless the appeal is accepted as an emergency appeal."), <u>with</u> § 3084.4 ("The submittal of more than one appeal for initial review within a 14 calendar day period is considered excessive, unless the inmate or parolee is submitting an emergency appeal."). Upon submittal/filing, "[t]he appeals coordinator or a delegated staff member under the direct oversight of the coordinator shall screen all appeals prior to acceptance and assignment for review." § 3084.5(b). The grievance will then be rejected or cancelled pursuant to section 3084.6, or accepted for review on the merits pursuant to section 3084.7. If accepted for review on the merits, the grievance must be returned with a written response providing reasons for each decision within the time limits provided in section 3084.8. § 3084.7(h).

### 2. Analysis

Miller alleges (a) defendant Mijangos wrongfully rejected his October 28, 2018 grievance regarding denial of his request for surgery as duplicative of his May 13, 2018 request for a CT scan of his hernia, dkt. 2 at ¶¶ 69, 76, Ex. G; and (b) defendant Statman wrongfully rejected his November 28, 2018 grievance regarding his request for a blanket and return of his property, <u>id.</u>, ¶¶ 86, 90, Ex. H. It is undisputed, however, that Miller "submitted" and, therefore, "filed" a grievance on October 28, 2018, which was subsequently rejected by defendant Mijangos, and another grievance on November 28, 2018, which was subsequently rejected by defendant Statman. <u>Id.</u> at ¶¶ 69, 76, 86, 90, Exs. G, H. Miller, however, is not entitled to any particular response to his grievances or to have his grievances "processed to [his] liking." <u>See</u> <u>Mann v. Adams</u>, 855 F.2d 639, 640 (9th Cir. 1988) ("There is no legitimate claim of entitlement to a grievance procedure."); <u>Jordan v. Asuncion</u>, No. CV 17-1283 PSG (SS), 2018 WL 2106464, at *3 (C.D. Cal. May 7, 2018) ("[A] prisoner [does not] have a constitutional right to any particular grievance outcome."). Hence, Miller's First

1  Amendment claims against defendants Mijangos and Stratman are subject to
2  dismissal.

3  **E.   THE COMPLAINT FAILS TO STATE A FOURTEENTH**
4  **      AMENDMENT PROCEDURAL DUE PROCESS CLAIM AGAINST**
5  **      DEFENDANTS LANE OR CURRY**

6  **      1.   Applicable Law**

7      "[A]n unauthorized intentional deprivation of property by a state employee

8  does not constitute a violation of the procedural requirements of the Due Process

9  Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the

10  loss is available." Hudson v. Palmer, 468 U.S. 517, 533 (1984).  California law

11  provides adequate post-deprivation remedies for property deprivations.  Barnett v.

12  Centoni, 31 F.3d 813, 816-17 (9th Cir. 1994) (citing California Government Claims

13  Act); Stribling v. Wilson, 770 F. App'x 829, 830 (9th Cir. 2019)[2] ("California [l]aw

14  provides an adequate post-deprivation remedy for any property deprivations."); see

15  also Cal. Gov't Code § 905.2(b)(3) (permitting claims for money or damages "for an

16  injury for which the state is liable"); Cal. Gov't Code § 810.8 ("Injury" means . . .

17  damage to or loss of property[.]").  It is immaterial whether a plaintiff succeeds in

18  obtaining redress through these remedies; it is their mere existence that bars him from

19  pursuing a Section 1983 due process claim.  See Dennison v. Ryan, 522 Fed. App'x.

20  414, 418 (9th Cir. 2013) (inmate's inability to access grievance procedure regarding

21  property loss did not render postdeprivation remedy inadequate under Hudson).

22  **      2.   Analysis**

23      Here, Miller alleges defendants Lane and Curry deprived him of his personal

24  property, worth $217.15, without due process because the California Department of

25  Government Services' delegation of his Government Claim back to CDCR deprives

26  Miller of an adequate post-deprivation remedy.  Dkt. 2 at ¶¶ 156-58, Exs. N, O.  The

---

28  [2] The Court may cite to unpublished Ninth Circuit opinions issued on or after January
1, 2007.  U.S. Ct. App. 9th Cir. R. 36-3(b); Fed. R. App. P. 32.1(a).

Ninth Circuit is clear, however, that California's Government Claims Act provides inmates with an adequate post-deprivation remedy for any property deprivations. Barnett, 31 F.3d at 816-17. Moreover, pursuant to Section 935.6 of the California Government Code, the "Department of General Services may authorize any state agency to settle and pay claims filed pursuant to Section 905.2 [which permits claims for money or damages for loss of property] if the settlement does not exceed one thousand dollars ($1,000) or a lesser amount as the department may determine, or to reject the claim . . . ." Cal. Gov't Code § 935.6(a); see also Cal. Gov't Code § 935.6(a) comments to 1963 Addition ("This section is new. It permits the Board of Control to delegate the authority to settle certain small claims to the state agencies immediately concerned."). Therefore, Miller's Government Claim for $217.15 was properly delegated to CDCR, the state agency immediately concerned. Hence, Miller's Fourteenth Amendment procedural due process claim against defendants Lane and Curry is subject to dismissal.

## F.    THE COMPLAINT IMPROPERLY JOINS DISTINCT CLAIMS

### 1.    Applicable Law

A basic lawsuit is a single claim against a single defendant. Federal Rule of Civil Procedure 18(a) allows a plaintiff to add multiple claims to the lawsuit when they are against the same defendant. Federal Rule of Civil Procedure 20(a)(2) allows a plaintiff to join multiple defendants to a lawsuit where the right to relief arises out of the same "transaction, occurrence, or series of transactions" and "any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2). In contrast, unrelated claims against different defendants must be brought in separate lawsuits to avoid confusion and prevent "the sort of morass [a multiple claim, multiple defendant] suit produce[s]." George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007) (noting that unrelated claims against different defendants should be brought in different lawsuits, in part to prevent prisoners from circumventing filing-fee requirements and three-strikes rule under Prison Litigation Reform Act); Gonzalez v.

Maldonado, No. 1:11-cv-01774-SAB (PC), 2013 WL 4816038, at *2 (E.D. Cal. Sept. 9, 2013) (same). When numerous claims are misjoined, the court can generally dismiss all but the first named defendant without prejudice to the institution of new, separate lawsuits against some or all of the present defendants based on the claim or claims attempted to be set forth in the present complaint. Coughlin v. Rogers, 130 F.3d 1348, 1350 (9th Cir. 1997); Kirakosian v. J&L Sunset Wholesale & Tobacco, No. 2:16-CV-06097-CAS (AJWx), 2017 WL 3038307, at *3 (C.D. Cal. July 18, 2017) ("An accepted practice under Rule 21 is to dismiss all defendants except for the first defendant named in the complaint.").

### 2. Analysis

Here, the Complaint improperly joins thirteen claims against nine defendants arising out of multiple events. The claims against defendants Sanchez and Pfeil, and possibly defendant Warmsley, arise out of Miller's assignment to Yard Crew in retaliation for pursuing the Miller v. Foreman lawsuit, while the claims against defendants Afra and Mijangos do not involve retaliation or Miller's assignment to Yard Crew, but rather arise from defendant Afra's denial of Miller's request for hernia surgery. In addition, the claims against defendant Stratman arise out of his rejection of Miller's grievance requesting a second blanket, while the claims against defendants Lane, Curry, and Carranza all arise after Miller's return to CSP-LAC from surgery and allege retaliation for pursuing the Miller v. White lawsuit. Accordingly, the claims against defendants Sanchez, Pfeil, and Warmsley do not arise out of the same "transaction, occurrence, or series of transactions" as the claims against defendants Afra and Mijangos, defendant Stratman, or defendants Lane, Curry, and Carranza. Fed. R. Civ. P. 20(a)(2)(A). Moreover, the claims do not appear to present any "question of law or fact common to all defendants . . . ." Fed. R. Civ. P. 20(a)(2)(B). Accordingly, any amended complaint must only include properly joined claims.

///
///

# V.

## LEAVE TO FILE A FIRST AMENDED COMPLAINT

For the foregoing reasons, the Complaint is subject to dismissal. As the Court is unable to determine whether amendment would be futile, leave to amend is granted. See Lucas v. Dep't of Corr., 66 F.3d 245, 248 (9th Cir. 1995) (per curiam). Plaintiff is advised that the Court's determination herein that the allegations in the Complaint are insufficient to state a particular claim should not be seen as dispositive of that claim. Accordingly, while the Court believes Plaintiff has failed to plead sufficient factual matter in his pleading, accepted as true, to state a claim to relief that is viable on its face, Plaintiff is not required to omit any claim in order to pursue this action. However, if Plaintiff asserts a claim in his First Amended Complaint that has been found to be deficient without addressing the claim's deficiencies, then the Court, pursuant to the provisions of 28 U.S.C. § 636, ultimately will submit to the assigned district judge a recommendation that such claim be dismissed with prejudice for failure to state a claim, subject to Plaintiff's right at that time to file Objections with the district judge as provided in the Local Rules Governing Duties of Magistrate Judges.

Accordingly, IT IS ORDERED THAT **within twenty-one (21) days** of the service date of this Order, Plaintiff choose one of the following two options:

1.      Plaintiff may file a First Amended Complaint to attempt to cure the deficiencies discussed above. **The Clerk of Court is directed to mail Plaintiff a blank Central District civil rights complaint form to use for filing the First Amended Complaint, which the Court encourages Plaintiff to use.**

If Plaintiff chooses to file a First Amended Complaint, he must clearly designate on the face of the document that it is the "First Amended Complaint," it must bear the docket number assigned to this case, and it must be retyped or rewritten in its entirety, preferably on the court-approved form. Plaintiff shall not include new defendants or allegations that are not reasonably related to the claims

asserted in the Complaint.  In addition, the First Amended Complaint must be complete without reference to the Complaint, or any other pleading, attachment, or document.

An amended complaint supersedes the preceding complaint.  Ferdik v. Bonzelet, 963 F.2d 1258, 1262 (9th Cir. 1992).  After amendment, the Court will treat all preceding complaints as nonexistent.  Id.  **Because the Court grants Plaintiff leave to amend as to all his claims raised here, any claim raised in a preceding complaint is waived if it is not raised again in the First Amended Complaint.**  Lacey v. Maricopa Cty., 693 F.3d 896, 928 (9th Cir. 2012).

The Court advises Plaintiff that it generally will not be well-disposed toward another dismissal with leave to amend if Plaintiff files a First Amended Complaint that continues to include claims on which relief cannot be granted.  "[A] district court's discretion over amendments is especially broad 'where the court has already given a plaintiff one or more opportunities to amend his complaint.'"  Ismail v. Cty. of Orange, 917 F. Supp. 2d 1060, 1066 (C.D. Cal. 2012); see also Ferdik, 963 F.2d at 1261.  Thus, **if Plaintiff files a First Amended Complaint with claims on which relief cannot be granted, the First Amended Complaint will be dismissed without leave to amend and with prejudice.**

2.     Alternatively, Plaintiff may voluntarily dismiss the action without prejudice, pursuant to Federal Rule of Civil Procedure 41(a).  **The Clerk of Court is directed to mail Plaintiff a blank Notice of Dismissal Form, which the Court encourages Plaintiff to use if he chooses to voluntarily dismiss the action.**

///

///

///

///

///

///

**Plaintiff is explicitly cautioned that failure to timely respond to this Order will result in this action being dismissed with prejudice for failure to state a claim, or for failure to prosecute and/or obey Court orders pursuant to Federal Rule of Civil Procedure 41(b).**

Dated: February 03, 2020

HONORABLE KENLY KIYA KATO
United States Magistrate Judge